**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 18-4784**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellant,

          v.

TERRY WAYNE MILLENDER,

                    Defendant - Appellee.

**No. 18-4785**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellant,

          v.

BRENDA MILLENDER,

                    Defendant - Appellee.

**No. 19-4165**

UNITED STATES OF AMERICA,

                    Plaintiff - Appellee,

          v.

TERRY WAYNE MILLENDER,

                    Defendant - Appellant.

─────────────

Appeals from the United States District Court for the Eastern District of Virginia, at Alexandria. Anthony John Trenga, District Judge. (1:16-cr-00239-AJT-1; 1:16-cr-00239-AJT-2)

─────────────

Submitted: March 27, 2020                                    Decided: August 17, 2020

─────────────

Before MOTZ, WYNN, and RICHARDSON, Circuit Judges.

─────────────

Dismissed in part, reversed in part, vacated in part, and remanded by published opinion. Judge Motz wrote the opinion, in which Judge Wynn and Judge Richardson joined.

─────────────

G. Zachary Terwilliger, United States Attorney, Kimberly R. Pedersen, Assistant United States Attorney, Jamar K. Walker, Assistant United States Attorney, Alexandria, Virginia, Richard D. Cooke, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Richmond, Virginia, for Appellant/Cross-Appellee. Lana M. Manitta, RICH ROSENTHAL BRINCEFIELD MANITTA DZUBIN & KROEGER, LLP, Alexandria, Virginia, for Appellee Brenda Millender. Alan H. Yamamoto, Alexandria, Virginia, for Appellee/Cross-Appellant.

─────────────

DIANA GRIBBON MOTZ, Circuit Judge:

After a jury convicted Brenda Millender of conspiracy to commit wire fraud, money laundering, and conspiracy to commit money laundering, the district court granted her motion for a judgment of acquittal, reasoning that the evidence was insufficient to support a conviction on any of those counts. And, in case we reversed the judgment of acquittal, the court conditionally ordered a new trial. The Government now appeals, arguing that the district court erred both in finding the evidence insufficient to support the jury's verdict and in conditionally granting a new trial. For the reasons that follow, we reverse the judgment of acquittal, vacate the grant of a new trial, and remand for further proceedings consistent with this opinion.

## I.

### A.

In 2003, Pastor Terry Wayne Millender founded Victorious Life Church, a small church in Northern Virginia. Brenda Millender, Terry's wife and the church's "first lady," helped Terry with oversight of the church. Members' tithes and donations funded it.

Five years later, in 2008, Terry established Micro-Enterprise Management Group, a corporation with the stated mission to offer microloans to help individuals in the developing world start or expand small businesses. These loans were intended to aid the global poor and generate impressive returns for the lenders. Terry served as Micro-Enterprise's Chief Executive Officer, and Brenda worked as its registered agent. Grenetta Wells, a member of Victorious Life Church and a former financial planner and stockbroker

3

who had served a five-year sentence for a money-laundering conspiracy, served as Micro-Enterprise's Chief Operating Officer (COO). Terry and Wells solicited capital from Victorious Life parishioners, friends, and others, assuring them that Micro-Enterprise was a low-risk, high-reward, and socially just venture.

None of these promises proved to be true. Rather than invest lenders' money in microlending, as promised, Micro-Enterprise used those funds for other purposes. Some of the lenders' funds were used for foreign currency exchange (FOREX) trading, a particularly risky investment. Terry and Wells either did not tell lenders about the FOREX trading or falsely assured them that it was not risky. All funds used for FOREX trading were lost. Wells also used about $85,000 from Micro-Enterprise for day trading and lost all of it.

The majority of the funds Micro-Enterprise collected from lenders, however, paid for personal expenses for the Millenders and Wells. The Millenders spent extravagantly. They moved into a new house worth $1.75 million and sought to outfit it lavishly, ordering $30,000 in custom drapes and $92,000 in furniture, among other purchases.

In 2013, Terry created Kingdom Commodities Unlimited, another fraudulent investment scheme. He served as its CEO, while both Brenda and Wells assisted him. Kingdom Commodities claimed to facilitate Nigerian oil deals, but never successfully closed any. As with Micro-Enterprise, funds invested in Kingdom Commodities were spent on personal expenses, including housing payments, car payments, food, clothing, golf, and personal checks for the Millenders; Kingdom Commodities also provided personal checks to Wells.

4

B.

In October 2016, after the Government caught on to the schemes, a grand jury indicted the Millenders and Wells. Wells pleaded guilty and agreed to cooperate with prosecutors. A superseding indictment charged Brenda with 24 counts and Terry with 31. Each Millender faced charges of wire fraud, conspiracy to commit wire fraud, money laundering, and money-laundering conspiracy; Terry faced additional charges involving filing false tax returns and obstructing an official proceeding.

The case went to trial. Both Millenders raised intent defenses. Terry argued that he did not intentionally steal any money and attributed the losses to simple mismanagement. Brenda claimed that she did not know about any fraud and believed that Terry's ventures, although unsuccessful, were legitimate. The Government put on an extensive case, calling thirty witnesses, including investigators, alleged victims, and, critically, Wells. After the prosecution rested, each Millender moved under Federal Rule of Criminal Procedure 29 for a judgment of acquittal. The district court expressed doubts about the sufficiency of the evidence against Brenda but reserved its decision.

At the close of the eight-day trial, the jury convicted Terry on all 31 counts and convicted Brenda on seven counts — two counts of conspiracy to commit wire fraud, three counts of money laundering, and two counts of conspiracy to commit money laundering — but acquitted her of the other seventeen counts. Each Millender again moved for a judgment of acquittal. After a hearing, the district court granted Terry a judgment of acquittal on ten counts of concealment money laundering and granted Brenda a judgment

5

of acquittal on all seven counts of conviction. The court also conditionally granted Brenda a new trial in the event that its judgment of acquittal was reversed on appeal.

The district court explained its rationale for granting the judgments of acquittal in a thorough memorandum opinion and order. Beginning with the wire-fraud counts, the court upheld Terry's convictions on both the substantive and conspiracy charges, but found that the evidence did not show that Brenda "played any role in conceiving or understanding the scheme," or that she even knew that Micro-Enterprise and Kingdom Commodities were frauds. Consequently, the district court held that no reasonable jury could find that Brenda "knowingly joined any conspiracy to defraud investors," and thus that the evidence was insufficient to support her convictions for wire-fraud conspiracy.

The court then turned to the money-laundering counts. The court reasoned that because no reasonable jury could find that Brenda knew that the "proceeds" of Micro-Enterprise and Kingdom Commodities were unlawfully generated, the evidence was insufficient to support her convictions for either substantive money laundering or conspiracy to commit money laundering. The district court further concluded that no reasonable jury could find that either Terry or Brenda intended to structure any transactions to conceal the source of the money, and so the evidence could not support any of the concealment money-laundering convictions — all of Brenda's substantive money-laundering convictions, and most of Terry's. The court held that the evidence was sufficient, though, to sustain Terry's convictions for substantive promotional money laundering and conspiracy to commit money laundering.

The district court concluded its opinion by briefly stating its decision to grant Brenda a new trial: "Finally, as to Mrs. Millender, given the weight of the evidence, as detailed above, in the event this Order is vacated or set aside as to Mrs. Millender, the Court conditionally orders a new trial as to all reinstated counts of conviction."

The Government appealed. The district court then, over Terry's objection that the court lacked jurisdiction to sentence him during the pendency of the Government's appeal, sentenced Terry to 96 months' imprisonment and three years' supervised release and ordered him to pay more than $2 million in restitution. In response, Terry cross-appealed.

While these appeals were pending, Terry was diagnosed with a terminal illness. He died on March 4, 2020. Terry's counsel moved to dismiss Terry's cross-appeal and to remand the Government's case against him to the district court with instructions to vacate his convictions and sentence and to dismiss the indictment against him. The Government does not oppose the motion. We grant counsel's motion to dismiss Terry's cross-appeal. But because Terry's death raises novel questions about abatement doctrine, we remand the case against Terry to the district court to consider how best to proceed. Terry's death does not affect the Government's case against Brenda, *see, e.g.*, *United States v. Bennett*, 765 F.3d 887, 897 (8th Cir. 2014), and we now turn to that appeal.

II.

The Government first argues that the district court erred in finding that the Government had failed to produce sufficient evidence to convict Brenda and so in granting her motion for a judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29.

7

In considering such a challenge, we ask "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). We review the district court's decision on this issue de novo. *See United States v. Wilson*, 118 F.3d 228, 234 (4th Cir. 1997).

The district court believed there were two problems with the jury's verdict against Brenda. In the court's view, the evidence was insufficient to prove (1) that Brenda knew about the fraud; and (2) that she (or her husband) structured transactions to conceal the nature or source of the money. We address each of these in turn.

A.

The district court first held that the evidence could not support any of Brenda's convictions because it did not prove that she knew of the fraud perpetrated by Micro-Enterprise and Kingdom Commodities. All of Brenda's convictions require the Government to prove, *inter alia*, that she knew about unlawful activity. *See United States v. Burfoot*, 899 F.3d 326, 335 (4th Cir. 2018) (conspiracy to commit wire fraud under 18 U.S.C. § 1349 requires proof that "the defendant willfully joined the conspiracy with the intent to further its unlawful purpose"); *United States v. Blair*, 661 F.3d 755, 764 (4th Cir. 2011) (concealment money laundering under 18 U.S.C. § 1956(a)(1)(B)(i) requires proof that "the defendant knew that the property involved was derived from unlawful activity"); *United States v. Singh*, 518 F.3d 236, 248 (4th Cir. 2008) (conspiracy to commit money laundering under 18 U.S.C. § 1956(h) requires proof that "the defendant knew that the money laundering proceeds had been derived from an illegal activity").

8

In reaching its conclusion that such proof was absent here, the district court systematically reviewed different categories of evidence that the Government relied on in prosecuting Brenda, reasoning that "none of the evidence in these categories, either alone or collectively," proved that Brenda knew that Terry's schemes were fraudulent. These categories boil down to: Brenda's formal role in Micro-Enterprise and Victorious Life; money Brenda drew from Micro-Enterprise and Kingdom Commodities accounts; false and misleading statements regarding their income on the Millenders' 2010 bankruptcy petition; and Wells's testimony. We perceive no error in the district court's thorough reasoning about most of this evidence. But we cannot agree with the court's assessment of Wells's testimony.

"[U]ncorroborated testimony of an accomplice may be sufficient to sustain a conviction," and "on appeal, we are not entitled to assess witness credibility, and we assume that the jury resolved any conflicting evidence in the prosecution's favor." *United States v. Savage*, 885 F.3d 212, 219 (4th Cir. 2018) (alteration and internal quotation marks omitted); *see also Wilson*, 118 F.3d at 234. The district court, however, assessed Wells's credibility and failed to construe the evidence in the Government's favor in overriding the jury's verdict. First, the court noted that Wells did not point the finger directly at Brenda in pretrial interviews with investigators. The implication here is that Wells testified dishonestly, or at least inconsistently with her prior statements, so her testimony was not worth crediting. Second, the court stressed that most of Wells's testimony against Brenda "came in response to the Government's questions [during direct examination] about communications or agreements that lumped Mr. and Mrs. Millender together, and her

9

responses did not specifically differentiate between communications" with Terry and Brenda. For these reasons, the district court apparently discounted Wells's testimony on direct examination — and concluded that her testimony during cross-examination by defense counsel established "that at most, Mrs. Millender was present during certain conversations between Wells and Mr. Millender concerning how to deal with lenders that had asked for re-payment."

But on direct examination, Wells explained how she conspired with "Terry and Brenda," and that their crime involved "various misrepresentations and lies to the lenders or potential lenders." She elaborated that the three discussed the risks of FOREX and day trading but agreed not to warn lenders. Wells reported that Brenda became increasingly involved with both Micro-Enterprise and Kingdom Commodities, and that Terry insisted on including Brenda in any serious discussions about them. Wells testified that she apprised both Terry and Brenda of her concerns that lenders would report Micro-Enterprise to the authorities for failing to repay their money, and that the three agreed to "say nothing" to lenders about spending their loan principal. And Wells attested that she obtained approval from both Terry and Brenda to take money from Micro-Enterprise accounts for day trading.

Criminal knowledge often must be proved by circumstantial evidence, *see United States v. Santos*, 553 U.S. 507, 521 (2008), and a jury may "draw reasonable inferences from basic facts to ultimate facts," *Jackson*, 443 U.S. at 319. Assuming that Wells was credible — as we must on this sufficiency challenge — and construing the evidence in the Government's favor, Wells's testimony, buttressed by the other evidence, sufficed to

10

support the jury's verdict. That Wells did not always "specifically differentiate" between her interactions with Terry and Brenda is of no moment here. Wells offered no smoking gun, but a jury could reasonably infer from her testimony, in the context of Brenda's omnipresent involvement in Terry's ventures and use of money from them, that Brenda knew that the companies were fraudulent and went along with them anyway.

The district court thus erred in concluding that no reasonable juror could find that Brenda knew of the fraud perpetrated by Micro-Enterprise and Kingdom Commodities. The court relied on this ground alone to override the jury's guilty verdict as to two counts of wire-fraud conspiracy and two counts of money-laundering conspiracy, and we therefore reverse the district court's grant of Brenda's motion for a judgment of acquittal as to these counts.

### B.

The district court also found a second reason to override the jury's guilty verdict as to three substantive counts of money laundering under 18 U.S.C. § 1956(a)(1)(B)(i). Concealment money laundering, the basis for these convictions, requires, *inter alia*, proof "that the defendant knew that the transaction was designed in whole or part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the unlawful activity." *United States v. Farrell*, 921 F.3d 116, 137 (4th Cir. 2019).

Brenda's convictions for concealment money laundering rested on three checks from Kingdom Commodities, made out to her, that noted false purposes: a $500 check for "loan repayment"; a $600 check for "200 loan repay/400 salary"; and a $180 check for office party expense reimbursements. But the evidence, construed in the light most

11

favorable to the Government, showed that Brenda did not loan money to Kingdom Commodities; rather, it showed that the Millenders siphoned lenders' money from Kingdom Commodities' coffers and spent it on themselves. Nonetheless, the district court held that because these transactions did not "conceal[] the source of the money" and "were not otherwise structured or accompanied by circumstances sufficient to raise an inference of an intent or purpose to conceal," they could not support Brenda's concealment convictions.

We disagree. Though the district court accurately noted that the checks did not conceal the source of the money — that is, "the accounts from which the funds were drawn" — transactions need not conceal the *source* of the proceeds if they conceal the *nature* of the proceeds. *See* 18 U.S.C. § 1956(a)(1)(B)(i). A jury could reasonably find that the false purposes noted on the checks were designed to make the transferred funds look like lawful reimbursements for legitimate business expenses rather than unlawful transfers of lenders' money for the Millenders' personal use — in other words, to conceal the nature of the proceeds.

The district court's underlying concern seemed to be that "in order to convict for money laundering, there must be evidence of more than simply spending money on ordinary living expenses or even extravagances." True enough: "Spending money is legal. Laundering money by concealing is not." *United States v. Green*, 599 F.3d 360, 373 (4th Cir. 2010) (quoting *United States v. Nicholson*, 176 F. App'x 386, 395 (4th Cir. 2006) (Michael, J., concurring in part and dissenting in part)). For example, the Tenth Circuit affirmed the grant of a judgment of acquittal on concealment money laundering counts for

12

a defendant who withdrew unlawfully generated proceeds from his own bank account by way of a cashier's check, on which he was named as remitter, and used the check to make a mortgage payment. *See United States v. Garcia-Emanuel*, 14 F.3d 1469, 1476 (10th Cir. 1994). As to those counts, the Government charged only that the defendant spent unlawfully obtained money, not that he took any steps to conceal its nature or source. But as to the three counts at issue here, the Government charged that the Millenders took the additional step of presenting the unlawfully obtained money as something it was not. A reasonable jury could find that the Millenders not only spent the money but also tried to conceal its nature. No more is required to sustain the jury's verdict on these three counts, and we reverse the district court's grant of Brenda's motion for a judgment of acquittal as to these counts accordingly.

## III.

Having reinstated the jury's verdict against Brenda, we turn to the district court's conditional grant of her motion for a new trial.

A district court retains discretion to grant a new trial if doing so is in "the interest of justice." *United States v. Arrington*, 757 F.2d 1484, 1485 (4th Cir. 1985); Fed. R. Crim. P. 33(a). But a "court should exercise its discretion to grant a new trial 'sparingly.'" *United States v. Palin*, 874 F.3d 418, 423 (4th Cir. 2017) (quoting *Arrington*, 757 F.2d at 1486). A new trial is warranted only "[w]hen the evidence weighs so heavily against the verdict that it would be unjust to enter judgment." *Arrington*, 757 F.2d at 1485. In conditionally granting a new trial, a "court must specify the reasons for [its] determination." Fed. R.

13

Crim. P. 29(d)(1). We review for abuse of discretion. *United States v. Lentz*, 383 F.3d 191, 219 (4th Cir. 2004).

In this case, the district court thoroughly explained its decision to grant Brenda a judgment of acquittal. The court extensively described and examined all the evidence the Government offered in support of the charges against Brenda before finding the evidence insufficient to support her convictions. But the court provided no additional explanation for its decision to grant a new trial. Rather, the court simply stated: "Finally, as to Mrs. Millender, given the weight of the evidence, as detailed above" in its acquittal order, "in the event this Order is vacated or set aside as to Mrs. Millender, the Court conditionally orders a new trial as to all reinstated counts of conviction."

The trouble here is that we cannot discern specifically why the court granted Brenda's motion for a new trial. In addition to the requirement of Fed. R. Crim. P. 29(d)(1) that a "court must specify the reasons for" its conditional decision about a new trial, our cases stress that a district court should not lightly overturn a jury verdict. *See, e.g.*, *United States v. Smith*, 451 F.3d 209, 217 (4th Cir. 2006); *Arrington*, 757 F.2d at 1486. But the court here offered only a single sentence to explain its decision to order a new trial, and its reasoning on this issue rested entirely on its reasoning in the very different legal context of a motion for a judgment of acquittal — reasoning that we rejected in that context. The court offered no reasoning specific to its decision to grant a new trial.

We have not seen, and Brenda has not cited, a single case in which an appellate court affirmed the conditional grant of a new trial founded on reasoning as sparse as the district court's here. We cannot affirm this decision "without an actual explanation," and

14

in the absence of an explanation, "we cannot determine whether the district court abused its discretion." *United States v. Paulus*, 894 F.3d 267, 279 (6th Cir. 2018). Though the court "mentioned" the demanding standard for granting a new trial "in passing," *id.* at 278, on the record as it comes to us, we cannot say whether the court appreciated the limits on its discretion in making this decision. We therefore vacate the order conditionally granting Brenda a new trial. We remand the case to the district court so that it can consider whether to grant a new trial and, if so, specifically explain the rationale for that decision.

We note, however, that in deciding whether to grant a new trial based on the weight of the evidence, a district "court's authority is much broader than when it is deciding a motion to acquit on the ground of insufficient evidence." *Arrington*, 757 F.2d at 1485. Though a district court may not "draw inferences . . . unfavorable to the Government . . . from the evidence" in considering a motion for a judgment of acquittal, "[i]n determining the necessity of a new trial, such inferences are allowed." *United States v. Campbell*, 977 F.2d 854, 860 (4th Cir. 1992). Moreover, the court, "like the jury[,] ha[s] the advantage of observing the witnesses as they testif[y]," *United States v. Shipp*, 409 F.2d 33, 36 (4th Cir. 1969), and so may "evaluate the credibility of the witnesses" in adjudicating a motion for a new trial, *Arrington*, 757 F.2d at 1485. Accordingly, while the district court on remand must remain cognizant of the demanding standard for jettisoning a jury verdict in favor of a new trial, the court need not construe all the evidence in the Government's favor and may consider witness credibility.

15

## IV.

For the foregoing reasons, we dismiss Terry's cross-appeal and remand the judgment against Terry to the district court for further proceedings consistent with this opinion. We reverse the district court's grant of Brenda's motion for a judgment of acquittal, vacate the conditional grant of Brenda's motion for a new trial, and remand the case for proceedings consistent with this opinion.

*DISMISSED IN PART, REVERSED IN PART,*
*VACATED IN PART, AND REMANDED*