**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 20-4171**

─────────────

UNITED STATES OF AMERICA,

Plaintiff − Appellee,

v.

DJUAN TERRELL HARRIS,

Defendant – Appellant.

─────────────

Appeal from the United States District Court for the Southern District of West Virginia, at Huntington.  Robert C. Chambers, District Judge.  (3:19−cr−00156−1)

─────────────

Submitted:  September 21, 2021                          Decided:  December 30, 2021

─────────────

Before NIEMEYER, DIAZ, and QUATTLEBAUM, Circuit Judges.

─────────────

Affirmed by unpublished opinion.  Judge Diaz wrote the opinion, in which Judge Niemeyer and Judge Quattlebaum joined.

─────────────

Diana Stavroulakis, Weirton, West Virginia, for Appellant.  Michael B. Stuart, United States Attorney, Charleston, West Virginia, Ryan A. Keefe, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Huntington, West Virginia, for Appellee.

─────────────

Unpublished opinions are not binding precedent in this circuit.

DIAZ, Circuit Judge:

Djuan Terrell Harris appeals the district court's denial of his renewed motion for judgment of acquittal and his motion for a new trial, following his conviction for illegally possessing a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). Harris argues that (1) the evidence at trial didn't prove he knew he'd been convicted of an offense punishable by more than one year in prison, as required by *Rehaif v. United States*, 139 S. Ct. 2191 (2019); and (2) he is entitled to a new trial because the government misled the jury in closing arguments. We affirm.

I.

A.

Officer Brandon Michael stopped Harris outside of a Speedway in Huntington, West Virginia. As Harris walked toward his car, Michael noticed a lump resembling a firearm under Harris's clothing. Michael pulled up to Harris and activated his emergency lights. He searched Harris and recovered a handgun from a holster underneath Harris's shirt. Harris couldn't lawfully possess a firearm because of a 2015 felony conviction from Michigan.

B.

A grand jury returned a superseding indictment charging Harris with being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The government alleged Harris was prohibited from possessing a firearm because he'd previously been convicted of a crime punishable by more than one year in prison.

2

The case went to trial. Harris's defense was that he didn't know his Michigan conviction, for which he received only a two-year probationary sentence, was punishable by more than one year in prison. But he stipulated to the conviction itself and to the fact it was, indeed, punishable by a term of imprisonment exceeding one year. He also stipulated that the gun met the legal definition of a firearm and that it had moved in and affected interstate commerce. And Harris did not dispute that he knowingly possessed the handgun.

The government offered several documents to prove Harris knew the maximum sentence for his prior offense. It admitted the felony complaint and felony information, both of which noted that the offense was punishable by up to 20 years in prison, a $25,000 fine, or both. It also offered Harris's order of conviction and sentence and his order of probation, both of which only noted Harris's probationary sentence. The only document Harris had signed was the order of probation.

Additionally, at the government's request, the court took judicial notice of two Michigan Court Rules of Criminal Procedure. The first rule requires a court to inform a defendant of, among other things, the maximum sentence for the charged offense. Mich. Ct. R. 6.104(E)(1). The second rule requires prosecutors to give criminal defendants a copy of the information in their case before they plead guilty. Mich. Ct. R. 6.113(B). And because, as noted above, the information listed the maximum sentence for Harris's offense, he would have been on notice of that possible penalty if the prosecutors followed the rule.

Harris didn't testify, but his lawyer argued that Harris either hadn't been told that his Michigan offense was punishable by more than a year in prison or, if he had been told, he'd forgotten. As evidence, Harris offered the transcript from his Michigan sentencing

3

hearing, in which the judge announced Harris's sentencing guidelines range of 0 to 11 months in prison, but not the maximum sentence. Harris also submitted medical records showing that he'd suffered a brain injury from a motorcycle accident in 2007 and that in 2008, his mother had reported to doctors that he was having memory issues.

Harris called two witnesses. His sister testified that while Harris was living with her years before, he had trouble remembering things she asked him to do around the house. And another Huntington police officer, Officer Colin Cooper, testified that he'd detained Harris less than three weeks before Harris's arrest here. When Cooper asked Harris if he had a firearm, Harris said he had one and revealed where it was. Cooper added that he "ran the firearm, and it was actually given back to [Harris]." J.A. 315. He clarified on cross-examination that he was unaware Harris had a prior conviction. In closing, defense counsel argued that Harris's honesty and cooperation with Cooper suggested he didn't know he couldn't possess a firearm.

## C.

After a day-long trial, the jury found Harris guilty. Harris then moved for a judgment of acquittal and for a new trial.[1] He argued the evidence didn't prove he knew his Michigan offense was punishable by more than a year in prison and that the government

---

[1] Harris had also moved for a judgment of acquittal after the government rested and after the close of all evidence. The district court denied both motions.

4

misled the jury as to the legal issue in dispute during its closing argument.[2]  The district court denied the motions.

As to the sufficiency-of-the-evidence challenge, the court agreed with the government that its evidence was sufficient to show Harris had been told the maximum sentence for his offense.  The court also found that "a rational jury easily could conclude that [Harris] had not forgotten this fact when he committed the instant offense, particularly as he just recently had completed serving his two-year term of probation."  J.A. 827.

The court next considered Harris's claim that the government misled the jury by suggesting the only issue was whether Harris knew he'd been convicted of a crime.  It first noted that Harris waived his claim of error by failing to object at trial.  The court further held that Harris's claimed error wasn't plain error resulting in a fundamental miscarriage of justice because, "[a]lthough the Government did argue the evidence showed [Harris] had knowledge of his prior offense, it also explained how the evidence proved that he knew the offense was punishable by a term of imprisonment exceeding one year."  J.A. 830.  And the court explained that it properly instructed the jury on the elements and provided it with a copy of the instructions during its deliberations.

Harris timely appealed.

---

[2] In his post-trial motions, Harris also claimed that the district court erred by admitting some of the government's evidence and that the jury pool didn't adequately represent his race, thereby violating the Sixth Amendment.  The court denied Harris's motions on these grounds, too, but Harris doesn't appeal those rulings.

II.

A.

We first consider Harris's challenges to the sufficiency of the government's evidence under Federal Rules of Criminal Procedure 29 and 33.[3]

1.

We review de novo the denial of a Rule 29 motion for judgment of acquittal. *United States v. Burfoot*, 899 F.3d 326, 334 (4th Cir. 2018). "We must sustain a guilty verdict if, viewing the evidence in the light most favorable to the prosecution, the verdict is supported by substantial evidence." *Id.* "Substantial evidence is that which a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* (cleaned up). We "may not overturn a substantially supported verdict merely because [we] find[] the verdict unpalatable or determine[] that another, reasonable verdict would be preferable." *United States v. Burgos*, 94 F.3d 849, 862 (4th Cir. 1996). Rather, "reversal for insufficiency must be confined to cases where the prosecution's failure is clear." *Id.* (cleaned up).

Even where a district court denies a defendant's motion for judgment of acquittal, it "retains discretion to grant a new trial if doing so is in the interest of justice." *United States v. Millender*, 970 F.3d 523, 531 (4th Cir. 2020) (cleaned up). A court's authority to

---

[3] Harris filed motions for a judgment of acquittal and for a new trial challenging the sufficiency of the evidence, and the district court denied both. On appeal, it's unclear whether Harris challenges both rulings. He references the Rule 29 standard in his analysis of this issue, but only requests that we vacate his conviction and remand for a new trial as relief. Because doing so doesn't change the outcome, we consider both rulings.

grant a new trial is much broader than its authority to acquit based on insufficiency of the evidence, and we review only for abuse of discretion. *United States v. Arrington*, 757 F.2d 1484, 1485–86 (4th Cir. 1985). A district court needn't view the evidence in the light most favorable to the government, and it may evaluate witnesses' credibility. *Id.* Nonetheless, the court's "discretion should be exercised sparingly, and a new trial should be granted only when the evidence weighs heavily against the verdict." *Id.* at 1486.

2.

18 U.S.C. § 922(g) prohibits certain categories of individuals, including felons, from possessing firearms. Separately, § 924(a)(2) provides for up to 10 years' imprisonment for anyone who "knowingly violates" § 922(g). In *Rehaif v. United States*, the Supreme Court held that § 924(a)(2)'s knowledge element applies to the defendant's conduct and his relevant status. 139 S. Ct. at 2194. In other words, in § 922(g) prosecutions, the government must prove the defendant knew both that he possessed a firearm *and* that he belonged to the prohibited class charged in the indictment.

Harris argues the government failed to prove, as *Rehaif* requires, that he knew he belonged to a class prohibited from possessing firearms—here, felons. He leans on language in *Rehaif* assuming Congress wouldn't have intended for § 922(g) and § 924(a)(2) to "apply to a person who was convicted of a prior crime but sentenced only to probation, who does not know that the crime is *punishable* by imprisonment for a term exceeding one year." *Id.* at 2198 (cleaned up) (emphasis in original). The Court offered this hypothesis in defense of its holding that § 924(a)(2)'s knowledge element is twofold, explaining the Court "normally presume[s] that Congress did not intend to impose criminal

7

liability on persons who, due to lack of knowledge, did not have a wrongful mental state." *Id.* But the Court also said that the government's obligation to prove a defendant knew of his status shouldn't be overly "burdensome," as juries can infer knowledge from circumstantial evidence. *See id.*

Under the highly deferential standard that constrains our review here, we find that substantial evidence, viewed in the light most favorable to the government, supports the jury's verdict. The government offered circumstantial evidence that, despite only receiving a probationary sentence, Harris knew his offense was punishable by more than a year's imprisonment. Michigan law required that he be notified of the maximum sentence he was facing and provided with the criminal information in his case. And that information, which the government admitted at trial, listed the sentence as punishable by up to 20 years in prison. True, the government couldn't produce documentary evidence, like a transcript or signature, showing that the state court and prosecutors followed those procedural rules in Harris's case. But the jury still accepted the government's evidence as sufficient to prove that Harris had been notified of the maximum sentence for his offense. And we can't say that decision was unreasonable to the degree Rule 29 requires.

Another jury might have given more weight to Harris's evidence suggesting either that no one had told him or that he'd forgotten what his maximum punishment might have been. But this one didn't. And we're required to honor such credibility calls in all but the rarest of cases. Even if another verdict would have been reasonable—or preferable—that's not enough to overturn the jury's verdict here, which is at least substantially supported.

Nor can we say the district court abused its discretion by refusing to grant Harris's motion for a new trial on the same ground. District courts should exercise their discretion to "jettison[] a jury verdict in favor of a new trial" only "sparingly." *Millender*, 970 F.3d at 531–32. And given our circumscribed review, we can't say the district court erred by declining to do so here.

### B.

We turn now to Harris's claim that he's owed a new trial because the government made misleading and prejudicial remarks about the issues in dispute during its closing argument. The offending remarks are: "[T]his case is simply about a defendant who's prohibited under federal law from possessing a firearm," and "So, you know, what is at issue here? It's whether [Harris] knew that he had that conviction, whether he knew he had been convicted of that offense, and then possessed a gun." J.A. 339, 341. Harris claims these comments confused and misled the jury into thinking it only needed to decide whether Harris knew of his prior conviction and knowingly possessed the firearm— elements he never disputed—rather than that he knew his conviction was punishable by more than a year in prison.

On this ground, Harris only moved for a new trial, so we review for abuse of discretion. *Millender*, 970 F.3d at 531. And because Harris failed to object to these statements during the government's closing arguments, he must convince us that they were not only improper, but also that the error was plain and affected his substantial rights. *See United States v. Abdallah*, 911 F.3d 201, 220 (4th Cir. 2018) ("When, as here, a defendant fails to object to an improper closing argument at trial, [our] review is limited to plain

9

error."); *see also United States v. Lockhart*, 947 F.3d 187, 191 (4th Cir. 2020) (explaining a defendant will only succeed on a claim subject to plain-error review "if the error seriously affects the fairness, integrity or public reputation of judicial proceedings" (cleaned up)).

Harris's argument fails when we put the challenged statements in context. Throughout its closing, the government thoroughly explained how its evidence proved Harris knew his offense was punishable by more than a year in prison. What's more, even if these statements were improper, Harris can't show they affected his substantial rights because the district court accurately instructed the jury on the elements of the charge, including the *Rehaif* knowledge element. And the court provided the jury with a copy of the instructions for its deliberations. We therefore reject Harris's claim of error.

III.

For these reasons, the judgment of the district court is

*AFFIRMED.*