**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

———————

No. 22-4268

———————

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

FRANCIS ARTHUR,

Defendant - Appellant.

———————

Appeal from the United States District Court for the District of Maryland, at Greenbelt. Paul W. Grimm, Senior District Judge.  (8:17-cr-00253-PWG-4)

———————

Submitted:  November 20, 2023                    Decided:  December 1, 2023

———————

Before GREGORY, AGEE, and WYNN, Circuit Judges.

———————

Affirmed by unpublished per curiam opinion.

———————

**ON BRIEF:**  Peter L. Goldman, SABOURA, GOLDMAN & COLOMBO, P.C., Alexandria, Virginia; Alex P. Treiger, KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C., Washington, D.C., for Appellant.  Erek L. Barron, United States Attorney, Baltimore, Maryland, Christian J. Nauvel, Special Assistant United States Attorney, Thomas M. Sullivan, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Greenbelt, Maryland, for Appellee.

———————

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Francis Arthur was convicted after a jury trial of conspiracy to commit concealment money laundering, in violation of 18 U.S.C. § 1956(h), four counts of concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i) (counts 3 through 6), and one count of promotion and concealment money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), (B)(i). The district court sentenced Arthur to 12 months and 1 day in prison and 3 years of supervised release. On appeal, Arthur raises several challenges to his convictions. We affirm.

Arthur first challenges the district court's denial of his motion to dismiss the superseding indictment, arguing that the pretrial removal from the United States of his codefendant Kelvin Asare violated his rights under the Fifth and Sixth Amendments to present favorable testimony at trial. The parties debate the standard of review that governs this claim. Ordinarily, in an appeal of the district court's ruling on a motion to dismiss an indictment, we review the district court's factual findings for clear error and its legal conclusions de novo. *United States v. Barringer*, 25 F.4th 239, 246 (4th Cir. 2022). Arthur contends he adequately preserved this claim in the district court because his motion to dismiss the superseding indictment was based in part on the due process violation he experienced because of Asare's unavailability. Thus, while he did not argue in the district court that Asare's unavailability affected his ability to present favorable testimony, he argues that because the due process claim is preserved that this argument is allowed on appeal as a new argument supporting a preserved claim. The Government contends Arthur is raising this claim for the first time on appeal and that plain-error review applies. We

conclude that, regardless of the standard of review that applies, Arthur cannot prevail on this claim because he cannot demonstrate that an error occurred.

In *United States v. Valenzuela-Bernal*, the Supreme Court recognized that the Executive Branch's responsibility to faithfully execute the immigration policy adopted by Congress justifies the prompt removal of individuals without lawful status in the United States. 458 U.S. 858, 863-65, 872-73 (1982). That the Government removes a potential witness is not by itself sufficient to establish a violation of the Due Process Clause of the Fifth Amendment or the Compulsory Process Clause of the Sixth Amendment. *Id.* at 872-73. Rather, violation of these rights is established by the defendant making "a plausible showing that the testimony of the [removed] witness[] would have been material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses." *United States v. Kaixiang Zhu*, 854 F.3d 247, 254, 256 (4th Cir. 2017) (per curiam) (internal quotation marks omitted). We conclude that Arthur has not made this showing here.

Arthur's argument that Asare would have furnished material, favorable, and exculpatory testimony rests on a thin reed. His argument presumes that we accept his contention that Asare contacted Arthur's defense counsel before Arthur's trial—but after Asare had pleaded guilty to conspiracy to commit bank fraud, served his sentence, and was removed from the United States—and told counsel that Arthur was unaware of the conspiracy and that he (Asare) had informed prosecuting attorneys about Arthur's "lack of involvement in the conspiracy" during his (Asare's) plea and sentencing. But the Government disputed that contention below and disputes it on appeal. The district court

3

never resolved the issue, and the record discloses only that the person who spoke with defense counsel *claimed* to be Asare. Though this person initially agreed to appear for a deposition to provide testimony under oath confirming his identity and that defense counsel had accurately recounted his statements, he ultimately failed to appear for the deposition. These circumstances, we conclude, counsel against the conclusion that Arthur has established prejudice from the lack of Asare's testimony at trial.

Moreover, even if Asare was the person who spoke with defense counsel, and even if he had appeared and testified at trial that Arthur was unaware of the conspiracy and lacked involvement in it, Arthur still fails to show prejudice because such testimony "simply would not have been 'material and favorable to his defense, in ways not merely cumulative to the testimony of available witnesses.'" *Kaixiang Zhu*, 854 F.3d at 256 (quoting *Valenzuela-Bernal*, 458 U.S. at 873). "Evidence is material 'only if there is a reasonable likelihood that the testimony could have affected the judgment of the trier of fact.'" *Id.* (quoting *Valenzuela-Bernal*, 458 U.S. at 874). "Materiality 'must be evaluated in the context of the entire record.'" *Id.* (quoting *Valenzuela-Bernal*, 458 U.S. at 868).

Arthur, we conclude, cannot show Asare's testimony would have been both material and favorable to his defense in ways not merely cumulative to the testimony of available witnesses when that testimony is evaluated in the context of the entire record. Asare had repeatedly inculpated Arthur in his statements to government investigators and admitted under oath to the district court when pleading guilty that he had conspired with Arthur to execute a scheme to defraud financial institutions and that Arthur participated in aspects of that scheme. Of course, at trial, Asare could have disclaimed or renounced these

4

admissions and testified that Arthur knew nothing about the conspiracy and lacked involvement in it.  But if Asare had done so, the Government could have impeached that testimony.  And, critically, Arthur's knowledge or lack thereof of the conspiracy and the scope of his participation in it were matters that could have been addressed by other witnesses and, indeed, *were* addressed by the testimony Arthur and named coconspirator Samuel Attakora gave at trial.  Asare's testimony, we therefore conclude, was not both material and favorable to Arthur's defense in ways not merely cumulative to the testimony of the available witnesses.  Because Arthur fails to show a constitutional error, he cannot prevail on this claim, under review for plain error or otherwise.

Next, Arthur contends that the district court reversibly erred in refusing to conduct an *in camera* review of the Government's files on Asare.  In denying Arthur's motion to dismiss the superseding indictment, the district court declined to review the Government's files for material subject to disclosure under *Brady v. Maryland*, 373 U.S. 83 (1963).

"*Brady* requires the disclosure by the [G]overnment of evidence that is both favorable to the accused and material to guilt or punishment."  *United States v. Caldwell*, 7 F.4th 191, 207 (4th Cir. 2021) (cleaned up).  In evaluating the district court's ruling declining to review the Government's files for such material, we review the district court's legal conclusions de novo and its factual findings for clear error.  *Id.* at 208.  "[W]here a defendant at least makes some plausible showing that the particular information sought exists and that it would be both material and favorable to his defense," he is "entitled to have the information he has sufficiently identified submitted to the trial court for *in camera* inspection and a properly reviewable judicial determination made whether any portions

5

meet the material and favorable requirements for compulsory disclosure." *Id.* (cleaned up). However, "mere speculation that the information may be helpful is insufficient to justify an *in camera* review." *Id.* (cleaned up).

We conclude that Arthur fails to show reversible error in this regard. The Government produced to the defense all memoranda of interviews with Asare and DVDs containing video recordings of interviews of him conducted by law enforcement it had in its possession; in those produced materials, Asare made statements that both appeared to confirm and deny the existence of a conspiracy and that described his relationship with Arthur in conflicting ways. Although Arthur agrees on appeal that the Government disclosed these materials, he still maintains that the district court's review refusal was erroneous because the Government never produced "the rest of its file on Asare." This "file," Arthur continues, could contain evidence in the form of Asare's statements that Arthur was unaware of the fraud. Thus, in Arthur's view, because he had identified specific evidence—this "file"—that could contain materially favorable evidence in the form of Asare's statements that he was unaware of the fraud, he made a plausible showing requiring the district court's *in camera* review.

We reject this argument. It is premised on the existence of some "file" or portion containing notes by law enforcement and prosecutors about Asare in the Government's possession that it did not disclose. But Arthur has identified nothing in the record tending to suggest or show that such file or portion indeed exists or, if it exists, contains any such undisclosed notes about Asare. Arthur's mere speculation that such file or portion exists is not enough to meet the plausibility requirement needed for *in camera* review. *Cf. United*

6

*States v. King*, 628 F.3d 693, 703 (4th Cir. 2011) (stating that, in making requisite plausible showing, defendant must identify material with some degree of specificity and concluding that King made required plausible showing triggering his right to an *in camera* inspection by identifying existing transcript of grand jury testimony given by one witness that Government refused to disclose to defense); *Love v. Johnson*, 57 F.3d 1305, 1307, 1316 (4th Cir. 1995) (granting *in camera* examination in response to request for alleged victim's existing file with county social services department). We therefore affirm the district court's ruling declining to conduct an *in camera* review.[1]

Arthur also contends that the district court reversibly erred in denying his motion under Fed. R. Evid. 804(b)(3) to introduce into evidence testimony from Asare's former attorney Marc Hall about Asare's statement to him. We review a district court's ruling on the admissibility of evidence for abuse of discretion, viewing the "evidence in the light most favorable to the proponent[ and] maximizing its probative value and minimizing its prejudicial effect." *Burgess v. Goldstein*, 997 F.3d 541, 559 (4th Cir. 2021) (internal quotation marks omitted). Thus, we "will overturn an evidentiary ruling only if it is arbitrary and irrational." *Id.*

---

[1] Relying on *United States v. Abdallah*, 911 F.3d 201 (4th Cir. 2018), Arthur also argues that it was error for the district court to rely on the Government's assurances that all material, exculpatory evidence had been produced. But in *Abdallah*, we cautioned that the district court "cannot solely 'rely on the government's good faith' as a basis to avoid review" where a defendant has "identifie[d] specific evidence that could plausibly be favorable to his defense." Abdallah, 911 F.3d at 218 (quoting *King*, 628 F.3d at 702). Here, *Abdallah* is inapplicable because Arthur has failed to plausibly identify such evidence.

7

Rule 804(b)(3) of the Federal Rules of Evidence provides, in relevant part, that a hearsay statement made by a declarant who is unavailable as a witness may be admitted into evidence if the statement was one that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it . . . had so great a tendency to . . . expose the declarant to civil or criminal liability" and if the statement is "supported by corroborating circumstances that clearly indicate its trustworthiness." Fed. R. Evid. 804(b)(3). "Stated otherwise, 'hearsay may be admitted under this exception if (1) the declarant is unavailable, (2) the statement is genuinely adverse to the declarant's penal interest, and (3) corroborating circumstances clearly indicate the trustworthiness of the statement.'" *United States v. Alvarado*, 816 F.3d 242, 250 (4th Cir. 2016) (quoting *United States v. Bumpass*, 60 F.3d 1099, 1102 (4th Cir. 1995)).

Arthur's motion asserted that, after contacting defense counsel, Asare told attorney Hall that Arthur did not have knowledge about "the conspiracies and unlawful activities alleged in" the second superseding indictment. We conclude that Arthur cannot prevail on this claim because Asare's purported statement does not satisfy the second and third admissibility requirements under Rule 804(b)(3).

On the second requirement, the Rule only allows the admission of the self-inculpatory portions of a hearsay statement. *Williamson v. United States*, 512 U.S. 594, 599, 604 (1994). It does not permit the admission of statements about the roles of other individuals in the alleged crime. *Id.* at 599-600. "[W]hether a statement is self-inculpatory or not can only be determined by viewing it in context." *Id.* at 603. The question under Rule 804(b)(3) "is always whether the statement was sufficiently against

8

the declarant's penal interest that a reasonable person in the declarant's position would not have made the statement unless believing it to be true, and this question can only be answered in light of all the surrounding circumstances." *Id.* at 603-04 (internal quotation marks omitted).

Asare's purported statement to attorney Hall was made after Asare had pleaded guilty, been sentenced, served his sentence, and been removed from the United States. As the district court determined, and as the parties do not dispute on appeal, at the time of this statement, Asare was beyond the reach of the United States to bring him back for further criminal charges. Given these circumstances, Arthur's argument that Asare's statement was inculpatory for Asare lacks merit because the statement was not against his penal interest. *See, e.g.*, *United States v. Grajales-Montoya*, 117 F.3d 356, 364 (8th Cir. 1997) (finding it illogical for defendant to argue that statement by wife regarding defendant's lack of criminal involvement was inculpatory to wife because wife's statements about defendant's role would not have subjected wife to increased criminal liability).

Moreover, even if this statement was against Asare's penal interest, Rule 804(b)(3) also requires that such statement be supported by corroborating circumstances for it to be admitted. In determining whether such circumstances are present, we consider:

> (1) whether the declarant had at the time of making the statement pled guilty or was still exposed to prosecution for making the statement, (2) the declarant's motive in making the statement and whether there was a reason for the declarant to lie, (3) whether the declarant repeated the statement and did so consistently, (4) the party or parties to whom the statement was made, (5) the relationship of the declarant with the accused, and (6) the nature and strength of independent evidence relevant to the conduct in question.

*United States v. Dargan*, 738 F.3d 643, 650 (4th Cir. 2013).

9

Considered together, the circumstances here show the corroboration requirement was not met. Although Asare's purported statement to attorney Hall was consistent with what defense counsel claimed Asare had told him, it deviated from both Asare's statements to investigators that inculpated Arthur and his statements inculpating Arthur made to the district court under oath in connection with his guilty plea. Additionally, this unsworn statement to attorney Hall was made after Asare had served his sentence and was beyond the reach of the Government to further prosecute him, and no evidence suggests he was or is exposed to prosecution for making that statement. Further, we conclude after review that the evidence adduced at trial does not provide strong support for Asare's purported statement. Given the absence here of corroborating circumstances, the district court did not reversibly err in denying Arthur's motion.

Arthur next challenges the district court's decision to instruct the jury on willful blindness over his objection. We review the district court's decision to instruct the jury on willful blindness for abuse of discretion. *United States v. Vinson*, 852 F.3d 333, 357 (4th Cir. 2017). "The willful blindness doctrine is premised on the idea that defendants should not be permitted to 'escape the reach' of criminal statutes that require proof that a defendant acted knowingly or willfully 'by deliberately shielding themselves from clear evidence of critical facts that are strongly suggested by the circumstances.'" *United States v. Oloyede*, 933 F.3d 302, 316 (4th Cir. 2019) (quoting *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011)). To ensure that the willful blindness doctrine retains "an appropriately limited scope that surpasses recklessness and negligence," its application has "two basic requirements: (1) the defendant must subjectively believe that

there is a high probability that a fact exists and (2) the defendant must take deliberate actions to avoid learning of that fact." *Id.* (quoting *Global-Tech Appliances*, 564 U.S. at 769).

In deciding to instruct the jury on willful blindness here, the district court found both requirements had been satisfied. On appeal, Arthur challenges the district court's determination on only the second prong, arguing the instruction was unwarranted because there was no evidence that he took deliberate action to avoid learning of a scheme to defraud a credit union. We disagree. The evidence justified the instruction because it amply allowed the inference that Arthur "t[oo]k[] deliberate actions to avoid learning of" the fraud. *Global-Tech Appliances*, 563 U.S. at 769. The Wells Fargo bank account associated with corporation Anivac—which did not do any business—on which Arthur was the sole signatory received a fraudulently made wire transfer of $327,000 from a Nymeo Federal Credit Union account after Arthur was present during a meeting with Attakora and Asare where an imposter was shown fake credentials needed to effect the transfer from the Nymeo account to the Wells Fargo account.

On cross examination, Arthur admitted he was nervous about these funds and feared his dealings with Attakora and Asare could result in the involvement of law enforcement. Despite this nervousness, however, Arthur was careful not to confirm the details of the operation. Although he traveled with Asare and Attakora from Maryland to meet with the imposter in Atlanta, Georgia, he never asked questions about why the trio had traveled there. Arthur never contacted the Nymeo account holder after the $327,000 transfer had been made. Further, there was evidence suggesting that Arthur's reason for distributing

11

funds out of the account was to avoid having to deal with funds identified as fraudulently transferred. Although Arthur argues that he took affirmative steps to discover the source of the funds, the jury was not required to believe his testimony. *See Oloyede*, 933 F.3d at 316. Thus, because the jury could have reasonably inferred from all of this that Arthur took deliberate actions to discern the source of the funds, we discern no reversible error in the district court's decision to instruct the jury on willful blindness.

Finally, Arthur challenges the district court's denial of his post-trial motion for a judgment of acquittal or a new trial. He argues that the evidence is insufficient to support his convictions because the Government failed to prove he knew the funds in the Anivac Wells Fargo account that he distributed were proceeds of unlawful activity. He also contends that he is independently entitled to acquittal on counts 3 through 6 because the Government failed to prove he withdrew funds through cashiers checks and made a cash withdrawal knowing such transactions were designed to conceal proceeds of unlawful activity.

We review de novo the denial of a Fed. R. Crim. P. 29(c) motion for a judgment of acquittal after a guilty verdict. *United States v. Young*, 916 F.3d 368, 384 (4th Cir. 2019). In assessing the sufficiency of the evidence, we determine whether there is substantial evidence to support the verdict when viewed in the light most favorable to the Government. *Id.* Substantial evidence is "evidence that a reasonable finder of fact could accept as adequate and sufficient to support a conclusion of a defendant's guilt beyond a reasonable doubt." *Id.* (internal quotation marks omitted) (quoting *United States v. Howard*, 773 F.3d 519, 525 (4th Cir. 2014)). In assessing whether substantial evidence is present, we are

"'not entitled to assess witness credibility' and must 'assume that the jury resolved any conflicting evidence in the prosecution's favor.'" *United States v. Robinson*, 55 F.4th 390, 404 (4th Cir. 2022) (quoting *United States v. Savage*, 885 F.3d 212, 219 (4th Cir. 2018)). Defendants "bear[] a heavy burden" under this standard, and "appellate reversal on grounds of insufficient evidence is confined to cases where the prosecution's failure is clear." *Savage*, 885 F.3d at 219.

To obtain a conviction for money laundering conspiracy violating 18 U.S.C. § 1956(h), the Government had to prove: (1) the existence of an agreement between two or more persons to commit one or more of the substantive money laundering offenses proscribed under 18 U.S.C § 1956(a) or § 1957; (2) that the defendant knew that the money laundering proceeds had been derived from an illegal activity; and (3) the defendant knowingly and voluntarily became part of the conspiracy. *United States v. Green*, 599 F.3d 360, 371 (4th Cir. 2010). Concealment money laundering requires, *inter alia*, proof that the defendant knew that the property involved represented the proceeds of some form of unlawful activity, *United States v. Farrell*, 921 F.3d 116, 137 (4th Cir. 2019), and "proof 'that the defendant knew that the transaction was designed in whole or part, to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of the unlawful activity,'" *United States v. Millender*, 970 F.3d 523, 530 (4th Cir. 2020) (quoting *Farrell*, 921 F.3d at 137).

We review the district court's decision whether to grant a new trial for abuse of discretion. *Id.* at 531. Under Fed. R. Crim. P. 33, the district court "may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a).

13

"But a court should exercise its discretion to grant a new trial sparingly, [and a] new trial is warranted only when the evidence weighs so heavily against the verdict that it would be unjust to enter judgment." *Millender*, 970 F.3d at 531 (cleaned up).

We conclude after review that the Government presented sufficient evidence to show Arthur knew the funds in the Anivac Wells Fargo account that he distributed were the proceeds of unlawful activity. Arthur established a corporation that did no business, opened a bank account associated with it in which funds could be deposited, distributed fraudulently transferred funds to coconspirators, expected to receive a portion of the funds, and held suspicion about the nature of the funds and fear of the police as a result of the funds being present in the account yet nonetheless processed the distribution of funds out of the account. Attakora's testimony directly implicated Arthur as a knowing and voluntary participant in the fraud scheme and distributions and confirmed Arthur understood that, after the imposter used fraudulent documentation to effect the wire transfer of funds into the Anivac account, that his (Arthur's) role was to distribute funds out of the account. Attakora's testimony addressing the timing of and motivation for moving funds out of the Anivac account also allowed the jury to infer that the transactions distributing the funds were performed in order to conceal from Wells Fargo their unlawful nature, *see* 18 U.S.C. § 1956(a)(1)(B)(i); *see Millender*, 970 F.3d at 530 (noting that transactions supporting conviction need not conceal source of proceeds if they conceal the nature of proceeds and upholding conviction where jury could reasonably find that false purposes noted on checks were designed to make funds look like lawful reimbursements).

14

While Arthur criticizes Attakora's testimony as vague and inconsistent, it is the jury, not this court, that weighs the credibility of the evidence and resolves any conflicts in the evidence presented, *Caldwell*, 7 F.4th at 209, and the jury's credibility determinations are not susceptible to judicial review, *Robinson*, 55 F.4th at 404.  The jury heard from Attakora (as a witness for both the prosecution and the defense) and Arthur himself.  Both Attakora and Arthur were cross-examined, and the jury could assess the credibility of the testimony given by each.  Because we decline to second-guess the jury's determination, *Robinson*, 55 F.4th at 404, Arthur's credibility challenge provides no basis for him to receive relief on appeal.  Arthur fails to show the evidence weighs so heavily against the jury's verdict or a lack of substantial evidence supporting the verdict.  The district court thus did not reversibly err in denying his post-trial motion for a judgment of acquittal or a new trial.

Accordingly, we affirm the criminal judgment.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before this court and argument would not aid the decisional process.

*AFFIRMED*