**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-4499**

---

UNITED STATES OF AMERICA,

        Plaintiff – Appellee,

v.

DAVID DARNELL WHITEHEAD,

        Defendant – Appellant.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington. Terrence W. Boyle, District Judge. (7:20-cr-00191-BO-3)

---

Argued:  January 24, 2024                                    Decided:  February 23, 2024

---

Before HARRIS, RICHARDSON, and HEYTENS, Circuit Judges.

---

Affirmed by unpublished opinion. Judge Heytens wrote the opinion, in which Judge Harris and Judge Richardson joined.

---

**ARGUED:** Rudolph Alexander Ashton, III, DUNN PITTMAN SKINNER & CUSHMAN, PLLC, New Bern, North Carolina, for Appellant. Julie Anne Childress, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee. **ON BRIEF:** Michael F. Easley, Jr., United States Attorney, David A. Bragdon, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellee.

---

Unpublished opinions are not binding precedent in this circuit.

TOBY HEYTENS, Circuit Judge:

David Whitehead appeals six convictions stemming from his part in a smuggling scheme run by his wife. Because there was sufficient evidence for a reasonable juror to conclude Whitehead knew about and acted with intent to further the smuggling operation, we affirm.

Whitehead and his wife were paid by another man to bring multiple young women from Honduras to the United States to be the man's wife. Whitehead's wife spearheaded the operation, setting the rates, paying confederates, and assisting with transportation from the U.S. border to the man's home.

The first woman thought she would work as a cleaner or cook in the man's home until she paid off her debt for being brought to the United States. When the man revealed his intentions, the woman escaped. The man then paid Whitehead's wife to bring him a second woman. The man thought she was too young to be his wife, so he paid for a third to be brought over. The third woman—Karen Ordonez—escaped and called 911 after the man assaulted her. The man paid for a fourth woman to be brought over, but she never made it to the United States.

After Ordonez's 911 call, the smuggling scheme unraveled. Whitehead, his wife, and his brother-in-law were charged together in a 42-count indictment. Whitehead's wife and brother-in-law pleaded guilty, so Whitehead was tried alone. Some charges against Whitehead were dismissed before trial, and the district court granted a midtrial motion for acquittal on others.

A jury found Whitehead guilty of six counts. Count 1 charged him with conspiring

2

to commit smuggling. Counts 17 and 18 charged him with aiding and abetting the smuggling of two non-citizens, Karen Ordonez and her baby, respectively. Counts 36, 37, and 40 charged Whitehead with money laundering connected to Ordonez's entry. On each count, the district court sentenced Whitehead to 21 months of imprisonment to be followed by one year of supervised release, with all sentences served concurrently.

Whitehead challenges the sufficiency of the evidence supporting all six convictions. We view the evidence in the light "most favorable to the prosecution" and uphold the jury's verdict if "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Millender*, 970 F.3d 523, 528 (4th Cir. 2020). "Applying these standards, we conclude [Whitehead] ha[s] not met [his] heavy burden to show [his] convictions were not supported by substantial evidence." *United States v. Huskey*, 90 F.4th 651, 662 (4th Cir. 2024) (quotation marks removed).

Whitehead argues the same evidentiary failure undermines each conviction: the government did not prove he knew about any illegal activity and thus could not have proved he intended to further that activity. True, each charge required both knowledge of illegal activity and intent to further it. See JA 276–79 (jury instruction). But we conclude there was evidence from which a reasonable juror could find both were present here.

First, a reasonable juror could conclude that Whitehead "knew the unlawful purpose of the" smuggling scheme (JA 276 (Count 1)), that he "knew that the crime" of smuggling Karen Ordonez and her baby "was to be committed" (JA 276–78 (Counts 17, 18)), and that he knew the operation was an "unlawful activity" (JA 279 (Counts 36, 37, 40)). Whitehead's wife testified she told him about her smuggling business. Witnesses also

3

testified about Whitehead's knowledge and wariness of his wife's conduct, including that Whitehead warned his wife she was engaged in "human trafficking" (JA 126) and "might end up in trouble" (JA 198). The evidence showed that Whitehead was present several times when the man paid his wife—including when payments were made for Ordonez—and that Whitehead knew what the money was for. And Whitehead personally interacted with each of the women when he housed or transported them on their way to the man. From this and all the other evidence in the record, a reasonable juror could infer that Whitehead had intimate knowledge of the smuggling business, including the particulars of where and how the women came into the United States.

Next, a reasonable juror could conclude Whitehead "willfully joined" the plan (JA 276 (Count 1)) and "acted with the intention of causing" (JA 277–78 (Counts 17, 18)) and "promot[ing]" (JA 279 (Counts 36, 37, 40)) the smuggling of Ordonez and her baby. Whitehead personally wired money to locations near the Mexico–Guatemala border around the time Ordonez and her baby were there. Then, about two weeks later, Whitehead wired money to locations near the U.S.–Mexico border. These payments mirror the method Whitehead's wife admitted using to bring over the first woman. A special agent with Homeland Security Investigations also testified this pattern of payments fits the typical method used by smugglers: one payment is made as a deposit at the beginning of transit, and a second payment is made once the person reaches the U.S. border.

Whitehead insists there is an innocent explanation for the wires, claiming he sent money to support "his wife's family in Mexico." JA 244. But the jury was not required to credit that assertion, and we must assume the jury resolved all credibility disputes and

4

judgment calls in the government's favor. See *United States v. Perry*, 335 F.3d 316, 320 (4th Cir. 2003). Whitehead's wife testified that he was present when the man gave her the money for the wire transfers and that Whitehead knew what the money was for. Whitehead's wife also said Whitehead made the wire transfers for Ordonez's entry because the bank would be "suspicio[us]" if she made the same transfers multiple times. JA 182. The evidence about the nature of the wire transfers, together with his wife's testimony that he knew about the smuggling operation and why she asked him to wire the money, was enough for a reasonable juror to conclude Whitehead intended his actions to aid in Ordonez and her baby's entry.

None of Whitehead's arguments satisfy his heavy burden of showing the jury's verdict was not supported by substantial evidence. The district court's judgment is thus

*AFFIRMED*.

5